UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOSE ARNOLD MONTIEL,

                Plaintiff,

v.

COUNTY OF VAN BUREN et al.,

                Defendants.

_____/

Case No. 1:25-cv-66

Honorable Paul L. Maloney

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Saginaw County Correctional Facility (SRF) in Freeland, Saginaw County, Michigan. The

events about which he complains, however, occurred at the Van Buren County Jail and the Charles

Egeler Reception & Guidance Center (RGC) in Jackson, Jackson County, Michigan. Plaintiff sues

the County of Van Buren, the Van Buren County Jail, and the following Van Buren County

Sheriff's Office personnel: Sheriff Daniel E. Abbott; Undersheriff Kevin Conklin; Deputies Mike

Shannon, Unknown Holmes, Unknown Meyers, Unknown Kaler, and Unknown Bronn; Sergeants

N. Johnson and Unknown Horton;[1] Lieutenants Chad Hunt and Unknown Delarosa; Doctor A.

Lane; and Nurses Unknown Chris and Unknown Roselynn. Plaintiff also sues RGC and Doctor

Unknown Muzirman from RGC.

Plaintiff begins his complaint by describing an incident at the Van Buren County Jail.

Plaintiff does not provide a date for the incident; but he attaches to his complaint transcript excerpts

from his criminal trial relating to the incident. (Trial Tr. Excerpts, ECF No. 1-1, PageID.17–69.)[2]

---

[1] On the Court's docket, Sergeant N. Johnson is listed as Sergeant "M." Johnson. The Court directs the Clerk to change the reference to "N." Johnson.

[2] The Court may consider documents that are attached to a *pro se* complaint when considering whether the complaint states a claim upon which relief should be granted. *See, e.g.*, *Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) (affirming the Eastern District of Michigan District Court's consideration of the attachments to the plaintiff's complaint to determine that the plaintiff had received medical treatment and, therefore, failed to state a claim under the Eighth Amendment); *Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002 (6th Cir. May 23, 2018) (affirming this Court's consideration of the plaintiff's complaint allegations and the documents attached to the complaint to support the determination that the plaintiff failed to state a claim); *Hogan v. Lucas*, No. 20- 4260, 2022 WL 2118213, at *3 n.2 (6th Cir. May 20, 2022) (stating that "[b]ecause the documents attached to Hogan's complaint are referenced in the complaint and 'central to the claims contained therein,' they were properly considered at the § 1915(e)(2) screening stage" (citations omitted)). The Court will generally accept as true the statements that Plaintiff makes in the documents he has attached to the complaint. The Court will generally not accept as true statements made by others in the documents Plaintiff attaches to the complaint except to the extent that Plaintiff relies on the truth of those statements in his complaint. "When a document attached to the complaint contradicts the allegations, the document trumps the allegations . . . [if the] document . . . 'utterly discredit[s]' the allegations." *In re Flint Water Cases*, 960 F.3d 303, 329 (6th Cir. 2020).

The transcript excerpts from Plaintiff's trial set forth the testimony of Defendant Deputies Shannon, Holmes, Kaler, and Meyers and Defendant Sergeant Horton. On the one hand, Plaintiff relies on the truth of that testimony in multiple instances; on the other hand, the testimony discloses

Public records relating to Plaintiff's conviction indicate that the incident occurred on November 10, 2022. *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=321211 (last visited Mar. 16, 2025). At that time, Plaintiff was a pretrial detainee housed in a "max" cell of the Van Buren County Jail. Plaintiff pressed his cell emergency button. Defendant Meyers responded. Plaintiff informed Meyers that he was having chest pain. Meyers removed Plaintiff from his cell to bring him to the guard station where he could be seen by healthcare staff.

On the way, Plaintiff and Meyers encountered Defendants Shannon, Holmes, and Kaler. As Defendant Shannon approached, he instructed Plaintiff to put his hands on the wall. (Compl., ECF No. 1, PageID.1.) Plaintiff notes that, as he approached Shannon, he "made a swinging gesture." (*Id*.) He does not explain what a "swinging gesture" is. It does not appear to be an acknowledgement of the multiple punches to Defendant Shannon's head that the deputies described.

After Plaintiff's "swinging gesture," Defendant Holmes took Plaintiff "down." (*Id*..)[3] All of the deputies essentially jumped on Plaintiff. Plaintiff notes that his hands were trapped underneath him as he was face down on the floor. (*Id*.) Defendants testified that Plaintiff actively resisted presenting his arms to be handcuffed behind his back. (*See generally*, Trial Tr., ECF No. 1-1, PageID.25–69.) Shannon pressed a pressure point behind Plaintiff's ear to compel Plaintiff to bring his hands behind him to be handcuffed. (*Id*.) Eventually the deputies succeeded and Plaintiff

---

that the incident began when Plaintiff punched Defendant Shannon in the head several times, while Plaintiff suggests he did not do so.

[3] Plaintiff's allegations regarding the incident appear on the first two pages of his complaint. (*See* Compl., ECF No. 1, PageID.1–2.) Most of those allegations relate to Defendant Shannon's exploitation of the pressure point behind Plaintiff's ear to compel his compliance with the deputies' directions.

was handcuffed. Plaintiff alleges that after the incident his left shoulder was in pain. (Compl., ECF No. 1, PageID.1.) Plaintiff does not suggest that Shannon's use of a pressure point to compel compliance caused Plaintiff's shoulder injury.

The deputies recalled the events differently in only three respects: first, Holmes took Plaintiff "down" only after Plaintiff had, without provocation, punched Shannon in the head several times; second, Plaintiff actively resisted being secured in handcuffs; and third, the deputies were not aware of any injury to Plaintiff.

The jurors did not have the benefit of Plaintiff's account because he did not testify at his trial. Instead, they heard from the four deputies involved, watched a video of the incident, and saw pictures of Defendant Shannon's injuries. That evidence, however, was enough to convince them beyond a reasonable doubt that Plaintiff had assaulted Defendant Shannon.[4]

In Plaintiff's complaint, after describing the November incident he jumps forward seven months to June of 2023. Plaintiff reports that on June 18, 2023, he spoke with Defendant Bronn. (*Id.*, PageID.3; Grievance Form, ECF No. 1-1, PageID.10.) He asked Bronn if he could see a nurse because he was in severe shoulder pain. (*Id.*) He explained that his shoulder was making snapping sounds when he tried to pick up his arm. (Grievance Form, ECF No. 1-1, PageID.10.) Defendant Bronn spoke to Defendant Nurse Chris. (*Id.*) Chris told Bronn that it was simply arthritis and that Plaintiff should take ibuprofen to get some relief. (*Id.*)

---

[4] Plaintiff was sentenced to three to five years' imprisonment on January 23, 2024, following his Van Buren County Circuit Court jury conviction for violation of Mich. Comp. Laws § 750.197c. *See* Van Buren County Circuit Court Case Details, https://micourt.courts.michigan.gov/case-search/ (select "Continue;" enter "Van Buren;" select "36th Circuit Court;" enter Last Name "Montiel," First Name "Jose," select "Search;" select "Case ID 2022-0000024236") (last visited Mar. 16, 2025). Plaintiff has appealed the judgment; the case is pending in the Michigan Court of Appeals. *See* Case Information, *People v. Montiel*, No. 371723 (Mich. Ct. App.) https://www.courts.michigan.gov/c/courts/coa/case/371723 (last visited Mar. 16, 2025).

The next day, Plaintiff saw Defendant Nurse Jennifer. (Compl., ECF No. 1, PageID.3.) Nurse Jennifer referred Plaintiff to Defendant Dr. A. Lane. (*Id*.) Dr. Lane told Plaintiff that she did not see anything wrong with Plaintiff's shoulder. (*Id*.)

Soon thereafter, on July 20, 2023, a Van Buren County Circuit Court jury convicted Plaintiff on charges of fourth-degree fleeing and eluding, possession of a firearm by a felon, armed robbery, and the use of a firearm during the commission of a felony.[5] Plaintiff was sentenced on August 11, 2023. Plaintiff then entered the custody of the MDOC at RGC.

On August 27, 2023, Plaintiff had a shoulder x-ray. (Global Diagnostic Services Report, ECF No. 1-1, PageID.7.) The x-ray revealed no fracture or dislocation and that the joint was "maintained" and that Plaintiff experienced "mild hypertrophic degenerative changes and no radiographic evidence of soft tissue swelling." (*Id*.) Plaintiff alleges that "RGC . . . after the xray [stated] that there is a[n] abnormality and a bone poking out of [Plaintiff's] shoulder." (Compl., ECF No. 1, PageID.3.) That allegation is directly contradicted by, and "trumped" by, the Global Diagnostic Services Report.

Plaintiff notes that the medical staff at SRF also did an x-ray check and "also stated the same." (*Id*.)

Plaintiff does not indicate the relief he seeks. But, he does note that Defendants have violated his due process rights, that on November 10, 2022, Defendants Meyers, Shannon, Holmes, and Kaler violated Plaintiff's Eighth Amendment rights by the use of excessive force, and that the

---

[5] *See* Van Buren County Circuit Court Case Details, https://micourt.courts.michigan.gov/case-search/ (select "Continue;" enter "Van Buren;" select "36th Circuit Court;" enter Last Name "Montiel," First Name "Jose," select "Search;" select "Case ID 2021-0000023378") (last visited Mar. 16, 2025). Plaintiff has appealed the judgment; the case is pending in the Michigan Court of Appeals. *See* Case Information, *People v. Montiel*, No. 367471 (Mich. Ct. App.) https://www.courts.michigan.gov/c/courts/coa/case/367471 (last visited Mar. 16, 2025).

medical care providers violated Plaintiff's Eighth Amendment rights and HIPAA by their deliberate indifference to his serious medical need.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

6

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendants Van Buren Couty Jail and RGC

Plaintiff sues the Van Buren County Jail and RGC. The Van Buren County Jail, however, is a building that houses convicted prisoners and pretrial detainees; it is not a person and it "is not a legal entity susceptible to suit." *Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002); *see also Goldman v. Kalamazoo Cnty. Jail*, No. 1:16-cv-359, 2016 WL 3180043, at *2 (W.D. Mich. June 8, 2016) (collecting cases that hold a local jail is not a person subject to suit under § 1983). For that reason alone, Plaintiff has failed to state a claim against the Van Buren County Jail.[6]

Similarly, RGC is not a separate entity capable of being sued. As this Court noted in *Ryan v. Corizon Health Care*, No. 1:13-cv-525, 2013 WL 5786934 (W.D. Mich. Oct. 28, 2013), "individual prisons named as Defendants . . . (ICF, IBC, LRF and RGC) are buildings used by the MDOC to house prisoners. They are not the proper public entity for suit." *Id.* at *7; *see also Watson*, 40 F. App'x at, 89; *Caruthers v. Corr. Medical Serv., Inc.*, No. 1:10-cv-274, 2010 WL 1744881, at *1 (W.D. Mich. Apr. 27, 2010) ("The Duane Waters Hospital is not an entity capable of being sued. Rather, it is a building owned by the Michigan Department of Corrections."); *Poole v. Michigan Reformatory*, No. 09-CV-13093, 2009 WL 2960412, at *1 (E.D. Mich. Sept. 11. 2009)

---

[6] Although the Van Buren County Jail is not an entity subject to suit under § 1983, Van Buren County is an entity that is subject to suit under § 1983. *See, e.g.*, *Watson*, 40 F. App'x at 89 (noting that "[b]ecause the McCracken County Jail is a department of the county, the county is the appropriate party"); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (stating that "[s]ince the [Jefferson County] Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of Matthews's complaint"). Plaintiff has named Van Buren County as a defendant; however, as set forth fully below, Plaintiff has failed to state a claim against Van Buren County as well.

("Plaintiff names the Michigan Reformatory, the Earnest C. Brooks Correctional Facility, and the Macomb Correctional Facility as defendants in this action. Those entities, however, are institutions operated by the MDOC and are not . . . legal entities subject to suit . . . .").

Furthermore, § 1983 expressly requires that a named defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). However, as set forth above, neither the State of Michigan nor the MDOC is a "person" within the meaning of § 1983.[7] *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). And, because RGC is not an entity separate from the MDOC, it is not a "person" under § 1983 either. *See, e.g.*, *Tinney v. Detroit Reentry Center*, No. 2:19-CV-10894-TGB, 2020 WL 4334964, at *2 (E.D. Mich. July 28, 2020) (stating "[a] state prison facility is not a person . . . capable of being sued under § 1983"); *Ward v. Healthcare Clinic*, No. 16-10646, 2016 WL 3569562, at *1 (E.D. Mich. July 1, 2016) (same); *Poole*, 2009 WL 2960412, at *1 (same). Accordingly, for the foregoing reasons, RGC will be dismissed as a Defendant.

### B.    Defendant Van Buren County

Plaintiff names Van Buren County as a Defendant. Van Buren County may not be held vicariously liable for the actions of its employees under § 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell*, 436 U.S. at 694. Instead, a county is liable only when its official policy or custom causes the injury. *Connick*, 563

---

[7] Moreover, even if Plaintiff had identified the MDOC or the State of Michigan as a Defendant, those entities are immune from suit. The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

U.S. at 60. This policy or custom must be the moving force behind the alleged constitutional injury, and the plaintiff must identify the policy or custom, connect it to the governmental entity, and show that his injury was incurred because of the policy or custom. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003).

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. Moreover, the Sixth Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996). "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.*

Here, Plaintiff does not allege facts that support the inference that the violations or harms of which he complains were the result of an official policy or custom of Van Buren County. Thus, the Court will dismiss Plaintiff's claims against Van Buren County. *See Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff's allegation of custom or policy was conclusory, and plaintiff failed to state facts supporting the allegation).

### C.    Defendants Johnson, Abbott, Conklin, Hunt, and Delarosa

Plaintiff sues Sheriff Abbott, Undersheriff Conklin, Lieutenants Hunt and Delarosa, and Sergeant Johnson. But it does not appear that they played any role in the November 10 incident or with regard to Plaintiff's medical care.

### 1.    Defendant Johnson

As far as the Court can tell, Defendant Johnson is only mentioned in the caption that appears on each page of the complaint. He is not mentioned elsewhere in the factual allegations or the documents attached to the complaint.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," *Iqbal*, 556 U.S. at 676, and a claimed constitutional violation must be based upon active unconstitutional behavior. *See Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).

Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). With regard to Defendant Johnson, Plaintiff's allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain

statement of the claim showing that the pleader is entitled to relief"). Accordingly, Plaintiff's

complaint against Defendant Johnson will be dismissed for failure to state a claim.

### 2.    Defendants Abbott, Conklin, Hunt, and Delarosa

Plaintiff mentions Defendants Abbott, Conklin, Hunt, and Delarosa in the caption on each

page of the complaint and in at least one sentence and, possibly, two sentences. When commenting

on Defendant Shannon's testimony regarding the use of pressure points to compel compliance

Plaintiff writes:

> Being located behind my ear, (pressure point) and jaw, where they meet, and if
> [you] put pressure there it normally will gain compliance for just about anybody.
> Pg 127(320). More talk of how this Deputy Shannon is so intrigued by the pressure
> points on how to or the need to gain compliance from inmates if inmates don't do
> as the Van Buren County Jail, Sheriff's Dep't, Daniel E. Abbott, Kevin Conklin,
> Lt. Chad Hunt, [and] Lt. Delarosa want them to do.

(Compl., ECF No. 1, PageID.2.) Plaintiff goes on to state: "[a]nd the disreg[ard] to have those of

higher chain of command sit there and watch and not address such cruelty violates my due

process." (*Id*.)

It appears that Plaintiff is asking the Court to hold these Defendants liable because:

(1) these Defendants encourage deputies to use pressure points to compel compliance; (2) these

Defendants are higher up in the chain of command; or (3) these Defendants did not take action

against Defendant Shannon after he used a pressure point to gain Plaintiff's compliance. (*Id*.)

The use of pressure points to obtain compliance is a common practice.[8] Moreover, as noted

by Boston University School of Law Professor Steven Arrigg Koh:

---

[8] *See, e.g., McCue v. City of Bangor, Maine*, 838 F.3d 55, 59 (1st Cir. 2016) ("Kuhn initially placed
his chest on McCue's shoulder and asked McCue to give up his hands, but McCue refused. Even
after Kuhn placed his finger on a pressure point under McCue's nose to gain pain compliance and
even after Farrar struck McCue a few times on his arms, McCue refused to comply and kept his
hands underneath his body. McCue swore at the officers and threatened to kill them. Only after
Donnell arrived on the scene and tased McCue did McCue give his hands up. That enabled the
officers to handcuff his arms behind his back."); *Hill v. Curcione*, 657 F.3d 116, 120 (2d Cir. 2011)

At the level of local police departments, some have adopted more restrictive policies and training tools regarding use of non-deadly force. Several departments employ incremental use of force matrices or continuums to guide officer conduct by aligning force options with types of resistance. For example, the Charleston Police Department in South Carolina permits officers to use a level of force that is necessary and within the range of "objectively reasonable" options based on their force continuum. Although not described in their written policies, the continuum presented suggests that passive resistance may warrant soft empty-hand control, and it may progress to more physical control and hard strikes (with or without intermediate weapons) as resistance becomes active or assaultive. As another example, the Lincoln, Nebraska Police Department resistance control continuum outlines the relationship between civilian resistance and police use of force . . . .

[L]ow levels of subject resistance such as psychological and verbal resistance are paired with lower levels of police control that do not involve physical contact. When subjects engage in passive or defensive resistance, the continuum guides officers to respond with physical contact, but not weapons. Across various states, soft empty hand techniques include control holds, joint manipulation, pressure points, and other techniques used to maintain compliance or facilitate control of non-compliant subjects. In responding to higher levels of subject resistance, hard

---

("The officers met resistance when they attempted to secure Hill's hands behind his back. Curcione asserts that it was necessary to apply 'wrist compliance' to control Hill's right wrist for placement in the handcuffs. He describes wrist compliance as 'manipulating the wrist joint and pressure points to gain control of a resistant inmate. The use of wrist compliance is standard operating procedure and pursuant to training received by a CERT officer.'"); *Sawyer v. Asbury*, 537 F. App'x 283, 287 (4th Cir. 2013), *abrogation on other grounds recognized in Brooks v. Johnson*, 924 F.3d 104, 114 n. (4th Cir. 2019), ("Sgt. Kearns believed the 'pressure point' had 'to do with a thumb up along the jawbone by the ear . . . .' JA 232. He described the pressure point control tactic as 'a pain compliance technique' and stated: '[W]hen someone has that on you it's causing pain and you try to get away from it.' JA 232. But, Kearns denied that the purpose of such a technique is to cause pain or injury, explaining: '[I]t's in an effort to get them to do what you want them to do. You— you apply the pressure to cause pain and you must tell them what to do; and when they comply, then you stop.' JA 233."); *McKinney v. Lexington-Fayette Urban Cnty. Gov't*, 651 F. App'x 449, 453 (6th Cir. 2016) ("During this struggle, Jones and Legear gave McKinney verbal commands to stop resisting, and Legear used a pressure-point control technique in an attempt to gain McKinney's compliance. R. 178–38 at PageID #2681."); *Forrester v. City of San Diego*, 25 F.3d 804, 805 (9th Cir. 1994) ("The 'pain compliance' policy provided for the police to use either 'Orcutt Police Nonchakus' (OPNs) (two sticks of wood connected at one end by a cord, used to grip a demonstrator's wrist) or direct physical contact (firm grip, wrist-and arm-twisting, and pressure point holds)."); *Allen v. Zavaas*, 474 F. App'x 741, 743 (10th Cir. 2012) ("Allen resisted, first actively by dragging Frankmore, then passively by slumping to the floor and refusing to move. The correctional officers unsuccessfully attempted pressure point methods to gain compliance."); *Bussey-Morice v. Kennedy*, 657 F. App'x 909, 911 (11th Cir. 2016) ("While Kennedy used his hand to control Bussey's head, Bussey began turning his head to spit. In response, Kennedy 'tried to use a pressure point technique' in an attempt to elicit Bussey's compliance.").

> empty hand techniques generally include kicks, punches, control strikes to pressure points, and takedowns. Finally, active aggression and deadly force assaults by the subject may warrant the use of weapons and even deadly force by law enforcement.

Steven Arrigg Koh, *Policing & the Problem of Physical Restraint*, 64 B.C. L. Rev. 309, 337–39 (Feb. 2023) (footnotes and graphic material omitted). Certainly, any use of force can be deployed beyond a level that is necessary and, thus, can be excessive. Nonetheless, simply alleging that a corrections officer used a pressure point to compel compliance does not support an inference that the officer used excessive force. Similarly, encouraging the use of pressure points as a means of obtaining control, standing alone, does not rise to the level of active unconstitutional conduct. Plaintiff has not alleged that these Defendants did anything more than encourage the use of pressure points generally.

It is possible that Plaintiff has named Defendants Abbott, Conklin, Hunt, and Delarosa because he contends they are responsible as superiors to the Defendant deputies. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). Similarly, supervisory liability cannot be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official as follows:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999), and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff has failed to state a claim against Defendants Abbott, Conklin, Hunt, and Delarosa because he has failed to state any facts that suggest they participated in active unconstitutional behavior relating to the "specific incident[s] of misconduct," *Peatross*, 818 F.3d at 242, at issue in his complaint. *See Frazier*, 41 F. App'x at 764. Accordingly, Plaintiff has failed to state a claim against Defendants Abbott, Conklin, Hunt, and Delarosa.

### D.    Eighth Amendment Claims Against Defendants Meyers, Kaler, Holmes, and Shannon

Defendants Meyers, Kaler, Holmes, and Shannon were all directly involved in the November 10 incident. Plaintiff contends that the take-down, the use of the pressure point, or the securing of Plaintiff's hands in handcuffs, injured his shoulder. There is little question that the Defendant deputies used force to restrain Plaintiff.

Plaintiff contends that he suffered "cruel and unusual punishment," which is prohibited by the Eighth Amendment. (Compl., ECF No. 1, PageID.3.) The Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also*

*Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to this type of Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask, "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of

decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

But the Eighth Amendment limitation applies to "punishments" and a pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (footnote and citations omitted). Put differently, the Eighth Amendment's limit on "punishment" does not apply to a pretrial detainee because a pretrial detainee may not be punished at all. *Id*. at 536–37 (explaining that "the Government concededly may detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment"). When a claim of deliberate indifference "is asserted on behalf of a pretrial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point." *Griffith v. Franklin Cnty*., 975 F.3d 554, 566 (6th Cir. 2020) (internal quotation marks and citations omitted).

Until recently, whether the Court considered a deliberate indifference claim under the Eighth Amendment or the Fourteenth Amendment did not make a difference because the Sixth Circuit "analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Greene v. Crawford Cnty*., 22 F.4th 593, 605 (6th Cir. 2022) (quoting *Brawner v. Scott Cnty*., 14 F.4th 585, 591 (6th Cir. 2021)). In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), in the context of considering a pretrial detainee's claim for the use of excessive force, the Supreme Court concluded that application of the Eighth Amendment standard—requiring that the "detainee must show that the officers were *subjectively* aware that their use of force was unreasonable"—was not appropriate. 576 U.S. at 391–92. Instead, the Court held that a "detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id*. at 396–97.

16

In *Brawner*, the Sixth Circuit concluded that the modification of the subjective component that *Kingsley* applied in the excessive force context was appropriately applied to deliberate-indifference claims. The *Brawner* court described the modification as a shift from the criminal recklessness standard adopted for the subjective element of an Eighth Amendment claim in *Farmer v. Brennan*, 511 U.S. 825 (1994), in favor of a "civil standard for recklessness," *Brawner*, 14 F.4th at 596. *Farmer* described that civil standard as follows: "[t]he civil law generally calls a person reckless who acts or (if the person has a duty to act) fails to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Farmer*, 511 U.S. at 836; *see also Howell v. NaphCare, Inc.*, 67 F.4th 302, 311 (6th Cir. 2023) (explaining that "[a]pplying *Kingsley*'s reasoning, *Brawner* held that a pretrial detainee must make a showing . . . that each defendant acted deliberately [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known" (internal quotation marks, footnote, and citations omitted)). This is a "distinction with[] a difference." *Howell*, 67 F.4th at 311.

Because Plaintiff's status at the time of the incident impacts the resolution of his claim, the Court must determine whether Plaintiff was a convicted prisoner or a pretrial detainee. On November 10, 2022, Plaintiff was detained in jail pending trial in *People v. Montiel*, No. 21-023378-FH (Van Buren Cnty. Cir. Ct.). The Court will, therefore, consider Plaintiff's claim under the Fourteenth Amendment Due Process Clause.

In *Cretacci v. Call*, 988 F.3d 860 (6th Cir. 2021), the Sixth Circuit explained the proper application of the Fourteenth Amendment Due Process Clause to an excessive force claim:

> "[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). To prevail on an excessive force claim, a pretrial detainee must show "that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396–97.

17

"[O]bjective reasonableness turns on the 'facts and circumstances of each particular case,'" *id*. at 397 (quoting *Graham*, 490 U.S. at 396), including

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id*. Courts must make this totality-of-the-circumstances determination based on what a reasonable officer on the scene knew at the time and account for the jail's legitimate interest in maintaining their facility, "deferring to 'policies and practices that . . . are needed to preserve internal order and discipline and to maintain institutional security.'" *Id*. (quoting *Bell v. Wolfish*, 441 U.S. 520, 540(1979)).

*Cretacci*, 988 F.3d at 869.[9]

Plaintiff contends that the use of force was objectively unreasonable because it was entirely unprovoked. Plaintiff alleges that Defendant Shannon stated that Plaintiff should put his hands on the wall. (Compl., ECF No. 1, PageID.1.) Then, as Plaintiff approached Shannon, he "made a swinging gesture." (*Id*.)[10] In response, Holmes took Plaintiff to the ground. (*Id*.) According to Plaintiff, he did not resist. Yet, Plaintiff acknowledges that his hands were trapped underneath him as he was face down on the floor. (*Id*.) Whether Plaintiff's inability to present his arms to the deputies as ordered was purposeful or involuntary, it would, objectively and reasonably, be interpreted as noncompliance by the deputies. There is nothing in Plaintiff's allegations that

---

[9] The application of the *Kingsley* standard to excessive force claims is fairly straightforward. *Kingsley* was an excessive force case and "excessive force, by definition involves active misconduct . . . ." *Helpenstine v. Lewis Cnty. Ky.*, 65 F.4th 794, 795 (6th Cir. 2023) (statement of Circuit Judge Readler respecting denial of rehearing en banc). Evaluating intent in the context of active misconduct is certainly easier than evaluating intent in the context of "conditions of confinement claims, otherwise known as deliberate indifference claims . . . that concern[] inaction." *Id*.

[10] That is the point at which the stories diverge. There is a significant difference between a "swinging gesture" and multiple punches to Shannon's head. The video of the incident would likely resolve any uncertainty. Perhaps anticipating that, Plaintiff alleges that staff in the Van Buren County Jail "altered, tampered, edited, and modified" the footage. (Compl., ECF No. 1, PageID.1.)

contradicts the deputies' testimony regarding those events. They stated that they continued to direct Plaintiff to comply but that Plaintiff would not. They continued to attempt to compel compliance—Shannon by the use of a pressure point and the others by pulling at Plaintiff's arms. Once Plaintiff was handcuffed, there are no allegations that the deputies took any further action to use force against Plaintiff.

Accepting Plaintiff's allegation regarding the "swinging gesture" as true, the Court concludes that Plaintiff's legal conclusion that he did not provoke the incident is plainly not true. When conducting this initial review, the Court must "accept all well-pleaded allegations in plaintiff's complaint as true and view facts in the light most favorable to plaintiff, [but the Court] 'need not accept as true legal conclusions or unwarranted factual inferences.'" *Nugent v. Spectrum Juvenile Justice Servs.*, 72 F.4th 135, 138 (6th Cir. 2023) (quoting *Bouye v. Bruce*, 61 F.4th 485, 489 (6th Cir. 2023)); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that in reviewing a motion to dismiss, the district court "must take all the factual allegations in the complaint as true," but that the court is "not bound to accept as true a legal conclusion couched as a factual allegation").

Moreover, the sworn testimony from the deputies that Plaintiff attaches to his complaint, and relies upon, and the jury's verdict, "trump" Plaintiff's allegation regarding his "swinging gesture" to the extent they are inconsistent. Of course, it is entirely possible that Plaintiff's allegation is not inconsistent with the testimony and verdict; rather, Plaintiff's allegation might simply be incomplete, i.e., Plaintiff omitted the fact that his swinging gesture was, in fact, swinging gesture**s** that ended with his fists hitting Defendant Shannon's head.

Whether Plaintiff only swung or actually made contact, however, the act would not give Defendants carte blanche to use any level of force in response. On the contrary, under *Kingsley*, the response must be objectively reasonable. Plaintiff alleges that following the "swing," he was taken down. And then Defendants secured Plaintiff's arms—which were either trapped underneath him or held there by his active resistance—until Plaintiff was handcuffed. Without more, under the circumstances, taking Plaintiff down and handcuffing him are objectively reasonable responses to either his "swinging gesture" toward, or his attack of, Defendant Shannon. Critically, Plaintiff does not allege any facts that might take that response outside of the bounds of objective reasonableness. He does not allege facts that support an inference that the response was violent beyond what was necessary to secure Plaintiff in handcuffs. Absent some facts to support an inference that the response was objectively unreasonable, Plaintiff has failed to state a Fourteenth Amendment excessive force claim against the four deputies.[11]

---

[11] Because Plaintiff alleges no facts that support an inference that the deputies' response was inappropriately violent, it appears that Plaintiff's claim that the deputies' response was unconstitutional depends entirely on his contention that it was unprovoked. If Plaintiff alleges that the response was only objectively unreasonable because there was no reason to use force at all, then his excessive force claim is properly dismissed for another reason. The suit would be barred under *Heck v. Humphrey*, 512 U.S. 477 (1994).

The Supreme Court has held that claims for declaratory relief and monetary damages that necessarily imply the invalidity of the punishment imposed are not cognizable under Section 1983 until the conviction or sentence has been overturned. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (addressing allegations of deceit and bias on the part of the decisionmaker in a misconduct hearing). The *Edwards* Court relied upon *Heck*, which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid*, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards*, 520 U.S. at 646 (emphasis in original) (citing *Heck*, 512 U.S. at 486–87). As the Supreme Court has stated, "[t]hese cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005).

E.    **Claims Regarding Deliberate Indifference to Plaintiff's Serious Medical Needs**

Plaintiff's allegation of "cruel and unusual punishment" might also extend to his claims that some Defendants ignored his reported shoulder injury. (Compl., ECF No. 1, PageID.3.) Although Plaintiff suggests that his shoulder was injured in the November 2022 incident, he does not allege any attempt at obtaining treatment until June 18, 2023. (*Id*.; *see also* Inmate Grievance Form, ECF No. 1-1, PageID.10.) On that date, Plaintiff asked Defendant Bronn if he could speak to a nurse for treatment of his shoulder pain. Defendant Bronn then, apparently, spoke to Defendant Nurse Chris. Nurse Chris advised that Plaintiff's problem was arthritis and that he should take ibuprofen. (Inmate Grievance Form, ECF No. 1-1, PageID.10.) Plaintiff names one other nurse as a defendant, Nurse Roselynn, but there are no allegations regarding Nurse Roselynn. (*See generally* Compl., ECF No. 1.)[12] Plaintiff mentions Nurse Jennifer—she requested that a doctor see Plaintiff—but, Plaintiff does not name Nurse Jennifer as a party. (Compl., ECF No. 1, PageID.3.) Plaintiff was thereafter seen by Defendant Dr. Alyssa Lane. (*Id*.) Dr. Lane told Plaintiff that she did not find anything wrong with Plaintiff's shoulder. (*Id*.)

When the MDOC took over custody of Plaintiff at RGC, Plaintiff underwent a shoulder x-ray. (*Id*.) The x-ray reports showed nothing more than "mild hypertrophic degenerative changes." (Global Diagnostic Services Report, ECF No. 1-1, PageID.7.) Essentially, the MDOC confirmed the county jail's healthcare diagnosis of arthritis. Plaintiff's allegation of protruding bones and

---

Plaintiff's conviction does not foreclose an argument that the deputies' actions in response to the assault exceeded what was necessary; but the conviction does foreclose the argument that there was no assault for the deputies to respond to. That argument would imply the invalidity of his assault conviction.

[12] Plaintiff's failure to make any factual allegations regarding Nurse Roselynn warrants dismissal of his complaint against her. *See supra* Section II.C.1.

rotator cuff tears is "trumped" by the Global Diagnostic Services Report. Plaintiff's doctor at RGC was Defendant Dr. Muzirman. (MDOC Kite Response, ECF No. 1-1, PageID.9.)

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith*, 975 F.3d at 566 (citing *Estelle*, 429 U.S. at 104; *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). Both "[t]he Eighth and Fourteenth Amendments are violated 'when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety.'" *Id.* (citations omitted). The application of the proper constitutional right depends on the nature of Plaintiff's detention: the Eighth Amendment applies to convicted prisoners and the Fourteenth Amendment applies to pretrial detainees. *Id.* (citations omitted). As noted above, prior to the entry of the judgment of sentence during August of 2023, Plaintiff was a pretrial detainee. Thus, Plaintiff's claims against Defendants Chris, Roselynn, and Lane are properly governed by the Fourteenth Amendment. Plaintiff's claims against Defendant Muzirman, however, arose after the judgment of sentence was entered and, therefore, arise under the Eighth Amendment.

As explained above, until recently, the Sixth Circuit "analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Greene*, 22 F.4th at 605 (quoting *Brawner*, 14 F.4th at 591). Then, in *Kingsley*, the Supreme Court differentiated the standard for excessive force claims brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause from those brought by convicted prisoners under the Eighth Amendment. *Kingsley*, 576 U.S. at 392–93. *Kingsley* left unanswered the question of

"whether an objective standard applies in other Fourteenth Amendment pretrial detainment context[s]." *Brawner*, 14 F.4th at 592.

Subsequently, in *Brawner*, the Sixth Circuit "modified the second prong of the deliberate indifference test applied to pretrial detainees to require only recklessness." *Id.* at 592, 596. At issue in *Brawner* was a pretrial detainee's claim for deliberate indifference to medical needs. The Sixth Circuit held that to demonstrate deliberate indifference, "[a] pretrial detainee must prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* at 597 (quoting *Castro v. City of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)); *see also Helphenstine v. Lewis Cnty., Ky.*, 60 F.4th 305, 316–17 (6th Cir. 2023) (affirming that *Kingsley*, as interpreted by *Brawner*, required courts to "lower the subjective component from actual knowledge to recklessness"). A pretrial detainee must prove that the defendant acted "deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Brawner*, 14 F.4th at 596 (citation and quotation marks omitted).

*Brawner*, however, "left the [objective] prong untouched." *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Farmer*, 511 U.S. at 834. In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899; *see also Phillips*, 534 F.3d at 539–40.

Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a

layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

Plaintiff's allegation regarding protruding bones and torn rotator cuffs could be a serious medical need; but the x-ray report does not confirm Plaintiff's allegation at all. At best, Plaintiff's submissions support an inference that he suffers from arthritis in his shoulder.

Certainly arthritis pain might be sufficiently severe to constitute a serious medical need. Here, however, the only characterization in the medical record regarding the severity of Plaintiff's condition indicates that he has mild degenerative changes. The treatment deemed appropriate for his condition was over-the-counter medication. The facts alleged by Plaintiff regarding his condition and the documents he has supplied do not support an inference that Plaintiff's arthritis qualifies as a serious medical need.

Moreover, even if Plaintiff's shoulder arthritis was a serious medical need, Plaintiff has failed to allege facts that show deliberate indifference, whether measured under the Eighth or the Fourteenth Amendment. Plaintiff complained to Bronn, and Bronn immediately contacted Nurse Chris. Nurse Chris advised Plaintiff that his condition appeared to be arthritis and suggested treatment with over-the-counter medication. Plaintiff next complained to Nurse Jennifer. She set up an appointment with Dr. Lane. Dr. Lane examined Plaintiff and also concluded that Plaintiff was suffering from arthritis. She also recommended over-the-counter medication. When Plaintiff went to RGC, he was sent for an x-ray. The x-ray revealed mild arthritis. Although Plaintiff contends that the Defendants were deliberately indifferent, he does not identify what treatment he should have had but did not get. Moreover, despite the passage of more than a year, Plaintiff fails to show how the conservative treatment proposed by Defendants has negatively affected him. In short, Plaintiff has failed to allege facts that support an inference that the county defendants were aware of a risk of harm to Plaintiff or that they recklessly disregarded any such risk, nor has he shown that Dr. Muzirman consciously disregarded any such risk.

For all of these reasons, Plaintiff has failed to state a claim for deliberate indifference to his serious medical needs.

### F.    HIPAA Violation Claims

Plaintiff claims that the failures of Dr. Lane or Dr. Muzirman to properly examine and treat him constitute violations of "HIPPA." HIPAA, the Health Insurance Portability and Accountability Act of 1996, establishes national standards to prevent medical professionals from disclosing patient information to anyone other than the patient and the patient's designated representatives. See 45 C.F.R. § 164.502. HIPAA does not establish standards for the examination or treatment of patients. Thus, Plaintiff's allegations do not support any inference that any HIPAA violation occurred.

Moreover, even if Plaintiff alleged facts that might show a HIPAA violation, HIPAA

provides no private right of action. *Pitchford v. Metro Nashville Police Dep't,* 2021 WL 2474461,

at *3 (M.D. Tenn. June 17, 2021).

> [P]enalties for HIPAA violations are imposed by the Secretary of Health and
> Human Services ("Secretary"). *See* 42 U.S.C. § 1320d–5(a)(1); *see also Wilson v.
> Memphis Light, Gas & Water*, No. 12-2956-STA-TMP, 2013 WL 4782379, at *3
> (W.D. Tenn. Sept. 5, 2013) (citing *Johnson v. Depts. Of Army and Air Force*, 465
> F. App'x 644, 645 (9th Cir. 2012) (affirming dismissal of HIPAA claim on the
> grounds that HIPAA provides no private right of action); *Bradley v. Pfizer, Inc.*,
> 440 F. App'x 805, 809 (11th Cir. 2011) ("[T]here is no private right of action for a
> violation of HIPAA's confidentiality provisions."); *Carpenter v. Phillips*, 419 F.
> App'x 658, 658 (7th Cir.2011) (affirming district court's conclusion that a claim
> under HIPAA "was not cognizable because HIPAA does not furnish a private right
> of action"); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir.2010) ("Any
> HIPAA claim fails as HIPAA does not create a private right of action for alleged
> disclosures of confidential medical information."); *Acara v. Banks*, 470 F.3d 569,
> 571 (5th Cir. 2006) ("We hold there is no private cause of action under HIPAA.");
> *Johnson v. Kuehne & Nagel Inc.*, No. 11-cv-02317-STA-cgc, 2012 WL 1022939,
> at *5 (W.D. Tenn. Mar. 26, 2012) ("HIPAA regulations do not confer a private right
> of action on an individual.")). If the plaintiff believes that a covered entity or
> business associate is not complying with HIPAA, his only recourse is to file a
> complaint with the Secretary. *See* 45 C.F.R. § 160.306; *see also Kuehne*, 2012 WL
> 1022939, at *5 ("Plaintiff's only redress for an alleged HIPAA violation is to lodge
> a written complaint with the Secretary of Health and Human Services[.]"

*Id.* Therefore, Plaintiff's HIPAA claims are properly dismissed.

## G.    Defendant Sergeant Horton

Plaintiff names Sergeant Horton as a Defendant. Plaintiff does not make direct allegations

against Defendant Horton. Nonetheless, Defendant Horton testified that he compiled the video of

the November 2022 incident on a CD. Because Plaintiff avers that the video was altered, the Court

concludes that Plaintiff is alleging that Defendant Horton has violated Plaintiff's due process rights

by presenting false evidence at Plaintiff's assault trial. This claim more directly runs afoul of the

*Heck* bar. As explained above, claims for declaratory relief and monetary damages that necessarily

imply the invalidity of the punishment imposed are not cognizable under § 1983 until the

conviction or sentence has been overturned. *See supra* note 11; *see also Edwards*, 520 U.S. at 648.

Although Plaintiff's assault conviction remains on direct appeal, it has not been overturned. Accordingly, Plaintiff's claim against Defendant Horton is properly dismissed for failure to state a claim.[13]

### Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   March 26, 2025                        /s/ Paul L. Maloney
                                               Paul L. Maloney
                                               United States District Judge

---

[13] A court's dismissal of a claim on the basis that it is barred by *Heck* is properly considered a dismissal under 28 U.S.C. § 1915(g) because it fails to state a claim on which relief can be granted. *See Kitchen v. Whitmer*, 104 F.4th 525, 534 n.4 (6th Cir. 2024) (a claim barred by *Heck* is properly dismissed for failure to state a claim).